**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION**

| | | |
|---|---|---|
| **IN RE:** | § | |
| | § | **CASE NO. 18-43727-mxm11** |
| **CONEX EQUIPMENT** | § | |
| **MANUFACTURING, LLC,** *et al.*[1] | § | **CHAPTER 11** |
| | § | |
| **DEBTORS.** | § | **(Jointly Administered)** |

---

**DEBTORS' CHAPTER 11 PLAN OF REORGANIZATION**

Dated: March 25, 2019

---

**WHITAKER CHALK SWINDLE &
SCHWARTZ, PLLC**
Robert A. Simon
Brandon Scot Pierce
301 Commerce Street, Suite 3500
Fort Worth, Texas 76102
Telephone: (817) 878-0543
Facsimile: (817) 878-0501
rsimon@whitakerchalk.com
spierce@whitakerchalk.com

**COUNSEL FOR DEBTORS AND
DEBTORS IN POSSESSION**

---

[1] The jointly administered Debtors are Conex Equipment Manufacturing, LLC, a Texas limited liability company, Case No. 18-43727-mxm-11, C.R.P. Machine and Welding, a Texas corporation, Case No. 18-43729-mxm-11, and the Ronald Lynn Perdue and Cathy Lea Perdue, as jointly filed individuals, Case No. 18-4731-mxm-11. All pleading and notices affecting any of the Debtors should be filed in the Lead Case.

## TABLE OF CONTENTS

                                                                                    Page

1.   **DEFINITIONS**..................................................................................................9

     Administrative Claim ....................................................................................... 9
     Administrative Claim Bar Date.......................................................................... 9
     Administrative Claim Distribution Date ............................................................. 9
     Allowed Administrative Claim ........................................................................ 10
     Allowed Amount ........................................................................................... 10
     Allowed Claim .............................................................................................. 10
     Allowed General Unsecured Claim................................................................... 10
     Allowed Interest ............................................................................................ 10
     Allowed Priority Tax Claim ............................................................................ 10
     Allowed Secured Claim.................................................................................. 10
     Available Cash .............................................................................................. 10
     Avoidance Action .......................................................................................... 10
     Avoided Lien................................................................................................. 10
     Bankruptcy Code ........................................................................................... 11
     Bankruptcy Court ........................................................................................... 11
     Bankruptcy Rules ........................................................................................... 11
     Bar Date........................................................................................................ 11
     Buildings ...................................................................................................... 11
     Business Day ................................................................................................. 11
     Cash ............................................................................................................. 11
     Cause of Action ............................................................................................. 11
     Chapter 11 Casse ........................................................................................... 11
     Claim ........................................................................................................... 11
     Claimant ....................................................................................................... 11
     Collateral...................................................................................................... 12
     Confirmation Date.......................................................................................... 12
     Confirmation Hearing..................................................................................... 12
     Confirmation Order ........................................................................................ 12
     Creditor......................................................................................................... 12
     Debtors ......................................................................................................... 12
     Debtors in Possession ..................................................................................... 12
     Disclosure Statement....................................................................................... 12
     Disputed Claim.............................................................................................. 12
     Disputed Claims Reserve ................................................................................ 12
     Distribution................................................................................................... 12
     Effective Date................................................................................................ 12
     Equity Interest ............................................................................................... 13
     Equity Interest Holder .................................................................................... 13
     Estate ........................................................................................................... 13
     Exit Financing ............................................................................................... 13

Final Distribution ................................................................................................ 13
Final Distribution Date ........................................................................................ 13
Final Order .......................................................................................................... 13
General Unsecured Claim ..................................................................................... 13
Governmental Unit ............................................................................................... 13
Initial Distribution Date ....................................................................................... 13
Insider ................................................................................................................. 13
Lien ..................................................................................................................... 14
Notice and a Hearing ........................................................................................... 14
Person ................................................................................................................. 14
Petition Date ........................................................................................................ 14
Plan ..................................................................................................................... 14
Plan Ballot ........................................................................................................... 14
Plan Documents ................................................................................................... 14
Plan Rate .............................................................................................................. 14
Priority Tax Claim ............................................................................................... 14
Pro Rata ............................................................................................................... 14
Professional Fee Claims ....................................................................................... 14
Professional Fees ................................................................................................. 14
Professionals ........................................................................................................ 15
Property ............................................................................................................... 15
Protected Persons ................................................................................................. 15
Rejection of Claim ............................................................................................... 15
Reorganized Debtor ............................................................................................. 15
Rights of Action .................................................................................................. 15
Sales Proceeds ..................................................................................................... 15
Schedules ............................................................................................................. 15
Sechdule of Cure Amounts ................................................................................... 15
Schedule of Rejected Contracts ............................................................................ 15
Secured Claim ...................................................................................................... 15
Secured Tax Claim ............................................................................................... 16
Unsecured Claim .................................................................................................. 16
Voting Deadline ................................................................................................... 16

**2.    RULES OF CONSTRUCTION** ................................................................. 16

**3.    CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS** ............... 17

Administrative Claims and Priority Tax Claims .................................................... 17
    Administrative Claims ..................................................................................... 17
    Priority Tax Claims .......................................................................................... 17
Classified Claims Against and Equity Interests in the Debtor ................................ 17
    Class 1 – Secured *Ad Valorem* Tax Claims ..................................................... 17
    Class 2 – Colonial Savings Secured Claim ....................................................... 17
    Class 3 – DATCU Credit Union Secured Claim ................................................ 17
    Class 4 – Trench Tech Claim ............................................................................ 17

Class 5 – General Unsecured Claims Against Conex ................................................. 17
Class 6 – General Unsecured Claims Against CRP .................................................. 18
Class 7 – General Unsecurerd Claims Against the Perdues ...................................... 18
Class 8 – Equity Interests ......................................................................................... 18

4.    **IMPAIRMENT OF CLASSES AND RESOLUTION OF CLAIM
      CONTROVERSIES** ........................................................................................ 18

      Impaired Classes ............................................................................................. 18
            Class 2 – Colonial Savings Secured Claim .................................................. 18
            Class 4 – Trench Tech Claim ....................................................................... 18
            Class 5 – General Unsecured Claims Against Conex ................................. 18
            Class 6 – General Unsecured Claims Against CRP .................................... 18
            Class 7 – General Unsecurerd Claims Against the Perdues ....................... 18
      Unimpaired Classes ........................................................................................ 18
            Class 1 – Secured *Ad Valorem* Tax Claims ................................................ 18
            Class 3 – DATCU Credit Union Secured Claim ........................................ 18
            Class 8 – Equity Interests ........................................................................... 18
      Controversy Concerning Classification, Impairment or Voting Rights ............ 18

5.    **TREATMENT OF CLAIMS AND EQUITY INTERESTS** ..................................... 18

      Impaired Classes ............................................................................................. 18
            Class 2 – Colonial Savings Secured Claim .................................................. 18
            Class 4 – Trench Tech Claim ....................................................................... 19
            Class 5 – General Unsecured Claims Against Conex ................................. 19
            Class 6 – General Unsecured Claims Against CRP .................................... 19
            Class 7 – General Unsecurerd Claims Against the Perdues ....................... 20
      Unimpaired Classes ........................................................................................ 20
            Class 1 – Secured *Ad Valorem* Tax Claims ................................................ 20
            Class 3 – DATCU Credit Union Secured Claim ........................................ 20
            Class 8 – Equity Interests ........................................................................... 20

6.    **MEANS OF IMPLEMENTATION** ..................................................................... 20

      Rehabilitation ................................................................................................. 20
      Refinancing of Indebtedness ........................................................................... 20
      Additional Capital .......................................................................................... 20
      Vesting of Property of the Estate of the Reorganized Debtor .......................... 21
      Continued Company Existence ........................................................................ 21
      Continuation of Operations ............................................................................. 21
      Powers of the Reorganized Debtor ................................................................... 21

7.    **CLAIM/EQUITY INTEREST OBJECTION PROCEDURES,
      TREATMENT OF DISPUTED CLAIMS/EQUITY INTERESTS** ........................... 23

Objection Process ........................................................................................... 23
Filing of Claims and Causes of Action ......................................................... 23
Disputed Claims Reserve ............................................................................... 24
Distributions to Holders of Disputed Claims ............................................... 24
Provisions Governing Distributions .............................................................. 24
    Record Date for Claims and Equity Interests .......................................... 24
    Delivery of Distributions to Holders of Allowed Claims ........................ 24
    Delivery of Distributions to Holders of Allowed Interests ...................... 25
    Unclaimed Distributions........................................................................... 25
    Uncashed Checks ..................................................................................... 25

**8.**     **EFFECT OF CONFIRMATION** ................................................................... 25

Legally Binding Effect ................................................................................... 25
Discharge......................................................................................................... 25
Limited Protection of Certain Parties in Interest .......................................... 26
Indemnification ............................................................................................... 26
Continuation of Anti-Discrimination Provisions of Bankruptcy Code ........... 26
Preservation of Claims and Rights ................................................................ 26

**9.**     **CONFIRMATION OF PLAN** ...................................................................... 27

Confirmation Hearing...................................................................................... 27
Statutory Requirements for Confirmation of the Plan................................... 27
Cramdown ....................................................................................................... 30
Conditions Precedent to Effective Date ........................................................ 31
Anulment of Plan if Conditions Not Waived or Satisfied............................. 31
Retention of Jurisdiction by Bankruptcy Court............................................. 31

**10.**   **COMPROMISES AND SETTLEMENTS** .................................................. 32

Effect of Confirmation Order ........................................................................ 32

**11.**   **MISCELLANEOUS PROVISIONS** ........................................................... 32

Rejection of Executory Contracts and Unexpired Leases ............................. 32
Bar Date for Administrative Claims............................................................... 33
Objections to Administrative Claims ............................................................. 33
Payment of Professional Fees......................................................................... 33
Payment of United States Trustee Fees ......................................................... 33
Directive to State Agencies ........................................................................... 33
Satisfaction of Liabilities................................................................................ 33
Warranty of Transfers from Debtor................................................................ 34
Compliance with Tax Requirements .............................................................. 34
Amendment of the Plan .................................................................................. 34
Timing of Distributions .................................................................................. 34

Enforcement of Subordination Agreements/Settlement Agreements ............................... 34
Filing of Documents in Public Records ............................................................. 34
Right to Seek Further Orders ......................................................................... 34
Regulatory Approvals ................................................................................. 35
Withdrawal of Plan ................................................................................... 35
Filing of Additional Documentation ................................................................ 35
Implementation ...................................................................................... 35
Substantial Consummation ........................................................................... 35
Further Effect of Confirmation ..................................................................... 35
Dates ............................................................................................... 35
Governing Law ....................................................................................... 35
Conflict ............................................................................................ 35
Severability ........................................................................................ 35
Setoffs ............................................................................................. 35
Other Considerations ............................................................................... 35
Feasibility of the Plan ............................................................................. 36
Alternative Plans of Liquidation ................................................................... 36
Liquidation Under Chapter 7 ......................................................................... 36
Risk Factors ........................................................................................ 36
Taxation ............................................................................................ 36
  Introduction ...................................................................................... 37
  Tax Consequences to Creditors ..................................................................... 37
  Information Reporting and Backup Withholding ....................................................... 38
  Importance of Obtaining Professional Assistance ................................................... 38

**12.  CAUSES OF ACTION** ..................................................................... 39

Preferences ......................................................................................... 39
Fraudulent Transfers ................................................................................ 39

**13.  VOTING PROCEDURES AND REQUIREMENTS** ................................................... 39

Ballots and Voting Deadline ......................................................................... 39
Creditors Entitled to Vote .......................................................................... 40
Voting Procedures ................................................................................... 40
Vote Required for Class Acceptance .................................................................. 41
Cramdown and Withdrawal of the Plan ................................................................. 41

## INTRODUCTION

On September 24, 2018, the Debtors each filed a voluntary petition for bankruptcy relief under 11 U.S.C. §1101 *et seq*. The Debtors' bankruptcy case numbers are as follows: (1) *Conex Equipment Manufacturing, LLC ("Conex")*, 18-43727-mxm; (2) *C.R.P. Machine & Welding, Inc. ("CRP")*, 18-43729-rfn; and (3) *Ronald Lynn Perdue and Cathy Lea Purdue*, (the "*Perdues*") 18-43731-mxm. The Debtors remain in possession of their property, and they are managing their business and personal affairs as debtors in possession pursuant to 11 U.S.C. §§ 1107 and 1108. Of the three Debtors, Conex has the earliest filed case.

The Debtors are separate legal entities or individuals, but together they operate a single business enterprise. CRP runs a machine shop that manufactures repair and replacement parts for industrial equipment, particularly trenching equipment. Conex is the marketing, sales, and administrative arm of the business. It sells the products and collects the money from sales. Conex pays CRP for the service of manufacturing product. The Perdues own and operate both companies. They each own 50% of the membership interest in Conex. Cathy Lea Perdue owns 51% of the shares in CRP. Ronald Perdue owns 49% of the shares in CRP. Neither Conex, nor CRP has any other equity holders. The Perdues are each officers of both Conex and CRP. Both Mr. and Mrs. Perdue actively participate in managing both companies. The Debtors have a single source of income, the industrial repair parts fabricated by CRP and sold by Conex. Conex would not exist without CRP and vice-versa.

The bankruptcy filings were caused by State court litigation in a case styled *Trench Tech International, Inc., v. Harold Randolph Lennard, Jr., Ronald Lynn Perdue, d/b/a CRP Enterprises, Cathy Lea Perdue, C.R.P. Machine & Welding, Inc., and Conex Equipment Manufacturing, LLC*, Case No. 348-251999-11, 348th Judicial District Court, Tarrant County, Texas (the "State Court Lawsuit"). All of the Debtors are defendants in the State Court Lawsuit. The filing of the bankruptcy cases has invoked the protection of 11 U.S.C. § 362(a) and stays the prosecution of the State Court Lawsuit.

Trench Tech International, Inc. ("Trench Tech") formerly manufactured and sold trenching equipment. It still sells repair parts for Trench Tech machines still in the field. Trench Tech is a competitor of the Debtors (CRP and Conex) in that the Debtors fabricate repair parts that fit on certain Trench Tech machines, thereby taking potential sales from Trench Tech. Several years ago, in the settlement of prior litigation with Trench Tech, the Debtors have agreed not to fabricate certain Trench Tech compatible parts for a period of five (5) years, and the agreement was incorporated into an injunction.

A dispute developed as to when the five (5) year period began and ended. In the State Court Lawsuit, Trench Tech alleges that the Debtors violated the State Court injunction by resuming fabrication of certain repair parts several months too soon. The Debtors contend that, even if Trench Tech's interpretation of the injunction is correct, the five year period has expired by now, and Trench Tech's actual, provable damages are slight. However, Trench Tech has asserted a potentially large (though unliquidated) damages claim, and has a potentially large claim for attorneys' fees, allegedly at least $35,000. There was also the risk that the State Court could enter a new injunction as some sort of sanction for past violations of the five (5) year

injunction.  The Debtors could not risk the potential for a large judgment and an injunction on their operations.  Furthermore, the expenses of the State Court Lawsuit caused the Debtors to fall behind paying certain pre-petition lenders and trade creditors, jeopardizing the Debtors' continued operations.  Accordingly, the Debtors filed these cases.  Since the Debtors operate and single business enterprise, and the Perdues jointly own Conex and CRP, the Debtors requested and obtained order allowing for joint administration of the three bankruptcy cases.

The Debtors are proponents of this Plan of Reorganization (the "Plan") within the meaning of bankruptcy Code § 1129 (as hereinafter defined), to address the rehabilitation of the Debtors' business and distributions to Creditors.  The Debtors seek to consummate the restructuring on the Effective Date of the Plan.

Reference is made to the Disclosure Statement (as hereinafter defined) for a discussion of the Debtors' history, business, property, results of operations and projections of future operations, as well as a summary and description of this Plan and certain related matters.  No materials other than the Disclosure Statement, this Plan and any exhibits and schedules attached hereto or thereto or referenced herein or therein have been authorized by the Debtors for use in soliciting acceptances or rejections of this Plan.

**ALL HOLDERS OF CLAIMS OR INTERESTS ARE ENCOURAGED TO READ THIS PLAN AND THE DISCLOSURE STATEMENT CAREFULLY AND IN THEIR ENTIRETY BEFORE VOTING ON THIS PLAN.**

## DEBTORS' CHAPTER 11 PLAN OF REORGANIZATION

Pursuant to 11 U.S.C. § 1127(a), Conex Equipment Manufacturing, LLC, C.R.P. Machine and Welding, and Ronald Lynn Perdue and Cathy Lea Perdue (collectively "Debtors") and files this Plan of Reorganization (the "Plan") to address the rehabilitation of Debtors' business and distributions to Creditors and Equity Interest Holders as their respective interests may appear in accordance with the Bankruptcy Code.

### Article 1
### DEFINITIONS

As used in the Plan, the following terms shall have the respective meanings specified below. Any term used in the Plan not defined below or herein shall be interpreted in accordance with the Rules of Construction set forth in Article 2 of the Plan.

1.1     **Administrative Claim**. Any cost or expense of administration of the Chapter 11 Case incurred on or before the Effective Date entitled to priority under § 507(a)(2) and allowed under § 503(b) of the Bankruptcy Code, including, without limitation, any actual and necessary expenses of preserving the Estate, including (i) wages, salaries or commissions for services rendered after the commencement of the Chapter 11 Case; (ii) certain taxes, fines and penalties; (iii) any actual and necessary post-petition expenses of operating the Debtors' business; and (iv) certain post-petition indebtedness or obligations incurred by or assessed against the Debtors in connection with the conduct of its business, or for the acquisition or lease of property, or for providing services to the Debtors, including all allowances of compensation or reimbursement of expenses to the extent allowed by the Bankruptcy Court under the Bankruptcy Code, and any fees or charges assessed against the Estate under chapter 123, title 28, United States Code. With respect to Administrative Claims which are allowed pursuant to §§ 503(b)(2), 503(b)(3), 503(b)(4), 503(b)(5), 503(b)(6), 503(b)(7), 503(b)(8) or 503(b)(9), there shall be an Administrative Claim against the Debtors only to the extent of, and only after the entry of, a Final Order approving such Administrative Claim following the filing of a motion or application prior to the Administrative Claim Bar Date.

1.2     **Administrative Claim Bar Date**.  The last day to file an application for allowance of an Administrative Claim (other than (i) quarterly U.S. Trustee fees, (ii) Professional Fee Claims, and (iii) administrative claims provided by third party non-professionals for goods and services provided in the ordinary course of the Debtors' business, which shall be twenty-one (21) days after the Effective Date unless otherwise established by a Final Order.

1.3     **Administrative Claim Distribution Date**.  The date, occurring as soon as practicable after the Effective Date, on which distributions are made pursuant to the terms of the Plan to holders of Allowed Administrative Claims; provided, however, that should such Allowed Claims be paid in the ordinary course of business, the Distribution Date shall be the date such Allowed Claim becomes payable under the terms of any contract or agreement or applicable non-bankruptcy law.

1.4 **Allowed Administrative Claim**. An Administrative Claim to the extent it is or becomes an Allowed Claim.

1.5 **Allowed Amount**. The amount of an Allowed Claim.

1.6 **Allowed Claim**. Any Claim (i) which has been scheduled by the Debtors pursuant to Bankruptcy Rule 1007 and (a) is not scheduled as disputed, contingent or unliquidated, (b) as to which no Proof of Claim has been filed and (c) as to which no objection to such scheduled Claim has been filed; (ii) as to which a timely Proof of Claim has been filed as of the Bar Date and no objection thereto has been made; (iii) that has been allowed by a Final Order; or (iv) the Claims held by the Proponents as set forth in the Proofs of Claim filed in the Chapter 11 Case. Any Claim that is allowed solely for purposes of voting to accept or reject this Plan pursuant to an Order of the Bankruptcy Court shall not be deemed to be an Allowed Claim for purposes of Distributions under this Plan.

1.7 **Allowed General Unsecured Claim**. A General Unsecured Claim to the extent it is or becomes an Allowed Claim.

1.8 **Allowed Interest**. Any Equity Interest on the Equity Interest Record Date that has not been disallowed pursuant to the terms of the Plan or a Final Order of the Bankruptcy Court. Any Equity Interest that is allowed solely for purposes of voting to accept or reject this Plan pursuant to an Order of the Bankruptcy Court shall not be deemed to be an Allowed Interest for purposes of Distributions under this Plan.

1.9 **Allowed Priority Tax Claim**. Any Claim, to the extent such Claim is an Allowed Claim and entitled to priority in payment under § 507(a)(8) of the Bankruptcy Code.

1.10 **Allowed Secured Claim**. A Secured Claim of a creditor to the extent such Claim is an Allowed Claim and the Lien securing such Claim or the amount of such Claim is not disputed or has not become an Avoided Lien.

1.11 **Available Cash**. All of the Cash on hand on any particular date less: (i) amounts reserved on account of Disputed Claims; (ii) amounts reasonably reserved for unpaid Administrative Claims, Priority Tax Claims, and Secured Tax Claims; (iii) amounts reasonably required by the Debtors to retain Professionals post-confirmation; and (v) amounts reasonably required by the Debtors, not to exceed $100,000 in total, to complete the transactions and other actions required under the Plan, including the investigation and prosecution of Claims, Rights of Action, and Causes of Action owned by the Estate.

1.12 **Avoidance Action**. Any and all rights, claims and causes of action arising under Sections 506(c), 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552(b), 553 or 724 of the Bankruptcy Code.

1.13 **Avoided Lien**. A Lien to the extent it has been set aside, invalidated, or otherwise avoided under any provision of the Bankruptcy Code or other applicable law.

1.14   **Bankruptcy Code**.   Title 11 of the United States Code, as in effect on the Confirmation Date.

1.15   **Bankruptcy Court**. The unit of the United States District Court for the Northern District of Texas, Fort Worth Division, having jurisdiction over this Chapter 11 Case, or in the event such Court ceases to exercise jurisdiction over this Chapter 11 Case, such court or adjunct thereof that exercises jurisdiction over the Chapter 11 Case in lieu of the United States Bankruptcy Court for the Northern District of Texas, Fort Worth Division, and any appellate or other court that is competent to exercise jurisdiction over the confirmation of this Plan.

1.16   **Bankruptcy Rules**.   The Federal Rules of Bankruptcy Procedure, as amended, and the Bankruptcy Local Rules for the Northern District of Texas, as applicable to this Chapter 11 Case, each as in effect on the Petition Date and the Effective Date, as applicable.

1.17   **Bar Date**. February 14, 2019.

1.18   **Buildings**.   Two commercial buildings located at 5255 Wilbarger St, Fort Worth, Texas 76119.

1.19   **Business Day**.   Any day other than a Saturday, Sunday or any other day on which commercial banks in Fort Worth, Texas are required or authorized to close by law or executive order.

1.20   **Cash**.   Legal tender of the United States of America, denominated in U.S. dollars, and equivalents thereof.

1.21   **Cause of Action**.   Any Claim or cause of action, legal or equitable, now owned or hereafter acquired by the Debtors, the Debtors in Possession or the Estate, whether arising under contract or tort, federal or state law, including, but not limited to, Avoidance Actions, whether commenced prior or subsequent to the Petition Date.

1.22   **Chapter 11 Cases**. (1) *Conex Equipment Manufacturing, LLC*, 18-43727-mxm; (2) *C.R.P. Machine & Welding, Inc.*, 18-43729-rfn; and (3) *Ronald Lynn Perdue and Cathy Lea Purdue*, 18-43731-mxm., filed on September 24, 2018 under Chapter 11 of the Bankruptcy Code by the Debtors and pending before the Bankruptcy Court.  The three Chapter 11 Cases are jointly administiered.  The Conex case, Case No. 18-43727-mxm is the "Lead Case."

1.23   **Claim**.   Any (i) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured; or (ii) right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

1.24   **Claimant**.   A Person asserting a Claim against the Debtors, its property, or the Estate.

1.25 **Collateral**. Any property or interest in property of the Estate subject to a Lien.

1.26 **Confirmation Date**. The date upon which the Bankruptcy Court enters the Confirmation Order.

1.27 **Confirmation Hearing**. The hearing to be conducted by the Bankruptcy Court to determine whether to approve the Plan.

1.28 **Confirmation Order**. The Order of the Bankruptcy Court approving and confirming the Plan in accordance with the applicable provisions of Chapter 11 of the Bankruptcy Code.

1.29 **Creditor**. Any Person that holds a Claim against any Debtor that arose or is deemed to have arisen on or before the Petition Date, including an Allowed Claim against the Debtors' Estate of a kind specified in §§ 502(g), 502(h) or 502(i) of the Bankruptcy Code.

1.30 **Debtors**. Collectively, Conex Equipment Manufacturing, LLC, C.R.P. Machine & Welding, Inc. and Ronald Lynn Perdue and Cathy Lea Purdue.

1.31 **Debtors in Possession**. The Debtors in their capacity as debtors-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code.

1.32 **Disclosure Statement**. The Disclosure Statement with respect to this Plan, including all exhibits and schedules thereto, filed by the Proponents and approved by the Bankruptcy Court pursuant to § 1125 of the Bankruptcy Code, as may be amended or supplemented.

1.33 **Disputed Claim**. A Claim against the Debtors as to which an objection has been filed on or before the deadline for objecting to a Claim and which objection has not been withdrawn, settled or otherwise resolved by Final Order, provided, however, that the Claims held by the Proponents as set forth in their Proofs of Claim filed in the Chapter 11 Case shall not be Disputed Claims to the extent that an objection to such Claims is filed by the Debtors, or any Person that is in any way related to or affiliated with the Debtors, including, without limitation, any Insider of the Debtors.

1.34 **Disputed Claims Reserve**. A reserve to be held in trust for the benefit of holders of Disputed Claims in accordance with the provisions of the Plan.

1.35 **Distribution**. The Cash and other property required by the Plan to be distributed to the holders of Allowed Claims and Allowed Interests.

1.36 **Effective Date**. The first Business Day after: (i) the date the Confirmation Order has been entered; and (ii) all conditions specified in Article 12 hereof have been satisfied or waived.

1.37  **Equity Interest**. Equity Interest shall have the meaning ascribed to "equity security" in § 101(16) of the Bankruptcy Code.

1.38  **Equity Interest Holder**. Equity Interest Holder shall have the meaning ascribed to "equity security holder" in § 101(17) of the Bankruptcy Code and refers to such holder of an Equity Interest on the Equity Interest Record Date.

1.39  **Estate**. The estate created upon the filing by the Debtors of the Chapter 11 Case pursuant to § 541 of the Bankruptcy Code, together with all rights, claims and interests pertaining thereto.

1.40  **Exit Financing.** The Exit Financing is a post-confirmtion loan, made on the Effective Date, by Exit Financing Lender to the Debtors in the principal amount of up to $500,000 to be used in accordance with the Plan.

1.41  **Final Distribution**. The final Distribution made pursuant to the terms of the Plan.

1.42  **Final Distribution Date**. The date on which the Debtors make the Final Distribution.

1.43  **Final Order**. An order or judgment which has not been reversed, vacated or stayed and as to which (a) the time to appeal, petition for *certiorari* or move for new trial, reargument or rehearing has expired and to which no appeal, petition for *certiorari* or other proceedings for a new trial, re-argument or rehearing shall then be pending, or (b) if an appeal, writ of *certiorari*, new trial, re-argument or rehearing thereof has been sought, such order or judgment of the Bankruptcy Court shall have been affirmed by the highest court to which such order was appealed, or *certiorari* shall have been denied or a new trial, re-argument or rehearing shall have been denied or resulted in no modification of such order, and the time to take any further appeal, petition for *certiorari* or move for a new trial, re-argument or rehearing shall have expired.

1.44  **General Unsecured Claim**. An Unsecured Claim other than an Administrative Claim, Priority Tax Claim, or Subordinated Unsecured Claim.

1.45  **Governmental Unit**. The term Governmental Unit shall have the meaning assigned in the Bankruptcy Code.

1.46  **Initial Distribution Date**. The date that is the earlier of (i) thirty (30) days following the Effective Date; (ii) such other date as ordered by the Bankruptcy Court that is at least fourteen (14) days following the Effective Date; or (iii) such date as determined by the Debtors that is at least fourteen (14) days following the Effective Date.

1.47  **Insider**. Insider shall have the same meaning assigned in the Bankruptcy Code.

1.48  **Lien**. A charge against or interest in property to secure payment of a debt or performance of an obligation which is not an Avoided Lien.

1.49  **Notice and a Hearing**. Shall have the meaning set forth in 11 U.S.C. § 102(1).

1.50  **Person**. An individual, a corporation, a partnership, an association, a joint stock company, a joint venture, an estate, a trust, an unincorporated association or organization, a Governmental Unit, or any agency or subdivision thereof or any other entity.

1.51  **Petition Date**. September 24, 2018, the date on which the Debtors filed the voluntary Chapter 11 petition commencing this Chapter 11 Case.

1.52  **Plan**. This Chapter 11 Plan of Reorganization, as it may be amended or modified from time to time.

1.53  **Plan Ballot**. The form of ballot that the Debtors will transmit to Creditors and Equity Interest Holders who are, or may be, entitled to vote on the Plan.

1.54  **Plan Documents**. Any and all documents contemplated to be executed in connection with this Plan.

1.55  **Plan Rate**. The rate of interest, if any, that will be paid on Claims, but only to the extent that this Plan specifies that interest will be paid on such Claims. For all non-tax claims, the Plan Rate shall be 5% simple interest, unless another provision of the Plan specifies a different rate. Interest shall be calculated from the Petition Date to each Initial Distribution Date, Interim Distribution Date and Final Distribution Date, as applicable.

1.56  **Priority Tax Claim**. Any Claim entitled to priority in payment under § 507(a)(8) of the Bankruptcy Code. A Claim based upon an assessed *ad valorem* tax that is secured by a statutory lien on property that was administered during this Chapter 11 Case is a Secured Tax Claim to the extent of the value of the property administered. Otherwise, such Claim is a General Unsecured Claim.

1.57  **Pro Rata**. The proportion that the dollar amount of an Allowed Claim or Allowed Interest in a Class bears to the aggregate amount of all Allowed Claims or Allowed Interests in such Class.

1.58  **Professional Fee Claims**. Administrative Claims for Professional Fees from the Petition Date through the Effective Date, as well as fees, expenses and other reimbursable costs incurred after the Effective Date in connection with the preparation and filing of fee applications with the Bankruptcy Court in respect of Professional Fee Claims.

1.59  **Professional Fees**. All fees, costs and expenses incurred in this Chapter 11 Case by any professional person (within the meaning of §§ 327, 328 or 1103 of the Bankruptcy Code or otherwise) and awarded by Final Order of the Bankruptcy Court pursuant to §§ 328, 330 or 503(b) or any other provision of the Bankruptcy Code and any professional fees, costs and

expenses which have been allowed pursuant to this Plan or by Final Order of the Bankruptcy Court.

1.60 **Professionals**. Any professional person approved by the Bankruptcy Court, including the lawyers, accountants, consultants, financial advisors, investment bankers and restructuring advisors, employed by the Debtors in this Chapter 11 Case at any time before the Effective Date. The term "Professionals" shall also include the attorneys for the Proponents.

1.61 **Property**. Any and all property owned by the Debtor, unless otherwise specified.

1.62 **Protected Persons**. Protected Persons shall have the meaning set forth in Article 8.

1.63 **Rejection of Claim**. A Claim arising from the rejection of an executory contract or a real property lease that is unexpired as of the Petition Date.

1.64 **Reorganized Debtors**. The Debtors, as a reorganized debtor as of the Effective Date in accordance with this Plan.

1.65 **Rights of Action**. Includes (a) any avoidance, recovery, subordination or other action of the Debtors, the Estate or the Reorganized Debtors, (b) any Cause of Action of the Debtors, the Estate or the Reorganized Debtors, (c) any objection or other challenge to a Claim, and (d) any objection or other challenge to an Equity Interest.

1.66 **Sales Proceeds**. The net proceeds, if any, received by the Debtors for the sale of Collateral.

1.67 **Schedules**. The Debtors' Schedules of Assets and Liabilities and Statement of Financial Affairs, as they may be amended or supplemented, and filed with the Bankruptcy Court in accordance with § 521(a)(1) of the Bankruptcy Code.

1.68 **Schedule of Cure Amounts**. The schedule of cure amounts which are to be paid with respect to the executory contracts and unexpired leases which are to be assumed pursuant to this Plan, as the same may be amended, modified, or supplemented from time to time in accordance with this Plan, which shall be included in the Plan Supplement.

1.69 **Schedule of Rejected Contracts**. The schedule of executory contracts and unexpired leases to be rejected pursuant to this Plan (which will include the effective dates that such executory contracts and unexpired leases shall be deemed to be rejected), as the same may be amended, modified, or supplemented from time to time in accordance with this Plan, which shall be included in the Plan Supplement.

1.70 **Secured Claim**. A Claim to the extent (a) secured by a Lien on property of the Estate, the amount of which is equal to or less than the value of such property (i) as set forth in this Plan, (ii) as agreed to by the holder of such Claim and the Proponents, or (iii) as

determined by a final order of the Bankruptcy Court in accordance with § 506(a) of the Bankruptcy Code; or (b) subject to any setoff right of the holder of such Claim under § 553 of the Bankruptcy Code.

1.71    **Secured Tax Claim**.  A Claim to the extent of the value, as may be determined by the Bankruptcy Court pursuant to § 506(a) of the Bankruptcy Code, of any interest in property of the Estate securing such Claim, or any Claim to the extent that it is subject to setoff under § 553 of the Bankruptcy Code.  To the extent that the value of such interest is less than the amount of the Claim which has the benefit of such security, such remaining Claim is a Deficiency Claim.

1.72    **Unsecured Claim**.  A Claim not secured by an enforceable charge, mortgage or Lien against, or interest in, property of the Estate.

1.73    **Voting Deadline**.  The date established by the Bankruptcy Court by which ballots to accept or reject this Plan must be received.

## Article 2
## RULES OF CONSTRUCTION

Unless otherwise specified, all section, article, schedule or exhibit references in this Plan are to the respective section in, article of, or schedule or exhibit to, this Plan, as same may be amended, waived, or modified from time to time.  The schedules and exhibits to this Plan are hereby incorporated herein by reference as if fully set forth herein.  Except as otherwise expressly provided herein, a term used in this Plan that is not defined herein shall have the meaning assigned to that term in the Bankruptcy Code or the Bankruptcy Rules.  The words "herein," "hereof" and "hereunder," and other words of similar import, refer to this Plan as a whole and not to any particular section, subsection or clause contained in this Plan, unless the context requires otherwise.  Whenever the words "include," "includes," or "including" are used in this Plan, such words are deemed to be followed by the words "without limitation," whether or not they are in fact followed by such words or words of like import.  Whenever from the context it appears appropriate, each term stated in either the singular or the plural includes the singular and the plural, and pronouns stated in the masculine, feminine or neuter gender include the masculine, feminine and the neuter.  The article headings contained in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.  The Plan is intended to be liberally construed to accomplish the goal of reorganizing the Debtor, either by a sale of the business or by internal reorganization led by a new investor group and equity owner. The fact that a defined term may sometimes appear uncapitalized in the body of the Plan does not change the meaning of the term if the context reasonably indicates that the word means the same thing capitalized or uncapitalized.

The rules of construction contained in § 102 of the Bankruptcy Code shall apply to the construction of this Plan, except for § 102(5) of the Bankruptcy Code. The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions hereof.  To the extent of any conflict between the provisions of the Plan and the provisions of the Disclosure Statements, the provisions of the Plan shall control.

## Article 3
## CLASSIFICATION OF CLAIMS AND EQUITY INTERESTS

The Claims against and Equity Interests in the Debtors are classified as set forth in this Article.

3.1    **Administrative Claims and Priority Tax Claims**.    In accordance with § 1123(a)(1) of the Bankruptcy Code, certain Administrative Claims and Priority Tax Claims have not been classified and, thus, are excluded from the Classes of Claims and Equity Interests set forth in Article 3.  These unclassified Claims are treated as follows:

3.1.1    **Administrative Claims**.  Allowed Administrative Claims arising under 11 U.S.C. § 503(b) will be paid in Cash and in full by the Debtors from Available Cash or the Exit Financing on the later of: (i) the Administrative Claim Distribution Date; (ii) the date on which such Administrative Claim becomes an Allowed Claim; or (iii) such other date as the Proponents and the holder of the Allowed Administrative Claim shall agree.  Allowed Administrative Claims that are not secured by a valid, perfected, post-petition Lien are not entitled to post-petition interest or legal fees and expenses.  By way of illustration, administrative claims shall include all post-petition accounts payable and Court approved compensation for the Debtors' professionals.

3.1.2.    **Priority Tax Claims**. The Debtors are not aware of any priority tax claims.

3.2    **Classified Claims Against and Equity Interests in the Debtors**.    Claims against and Equity Interests in the Debtors are classified as follows:

3.2.1    Class 1 – Secured *Ad Valorem* Tax Claims.    Class 1 comprises the Allowed Secured Tax Claims, if any, held by *Ad Valorem* Taxing Authorities against the Debtors.

3.2.2    Class 2 – Colonial Savings Secured Claim.    Class 2 comprises the Allowed Secured Claim of Colonial Savings, F.A. against the Debtors.

3.2.3    Class 3 – DATCU Credit Union Secured Claim.    Class 3 comprises the Allowed Secured Claim of DATCU Credit Union against Ronald and Cathy Perdue, secured by a lien on the 2017 Forest Riverstone 5th Wheel Trailer.

3.2.4    Class 4 – Trench Tech Claim.    Class 4 comprises the Allowed Claim of Trench Tech, Inc., against all Debtors in the agreed amount of $120,000 and includes all claims for equitable relief and contempt sanctions.

3.2.5    Class 5 – General Unsecured Claims Against Conex.    Class 5 comprises the Allowed General Unsecured Claims against Conex.

3.2.6    Class 6 – General Unsecured Claims Against CRP.  Class 6 comprises the Allowed General Unsecured Claims against CRP.

3.2.7    Class 7 – General Unsecured Claims Against the Perdues.  Class 7 comprises the Allowed General Unsecuree Claims against the Perdues.

3.2.8    Class 8 – Equity Interests.  Class 8 comprises of all allowed Interests in Conex and CRP.

## Article 4
## IMPAIRMENT OF CLASSES AND RESOLUTION OF CLAIM CONTROVERSIES

4.1    **Impaired Classes**.  Only holders of Claims that are in impaired Classes may vote on this proposed Plan. The following Classes of Claims and Equity Interests are impaired under this Plan and entitled to vote:

4.1.1    Class 2 – Colonial Savings Secured Claim.
4.1.2    Class 4 – Trench Tech Claim.
4.1.3    Class 5 – General Unsecured Claims against Conex.
4.1.4    Class 6 – General Unsecured Claims against CRP.
4.1.5    Class 7 – General Unsecured Claims against the Perdues.

4.2    **Unimpaired Classes**.  Holders of Claims that are in unimpaired Classes are deemed to have accepted the Plan and are not entitled to vote on this proposed Plan. The following Classes of Claims are not impaired under this Plan:

4.2.1    Class 1 – Secured *Ad Valorem* Tax Claims.
4.2.2    Class 3 – Secured Claim of DATCU.
4.2.3    Class 8 – Equity Interests.

4.3    **Controversy Concerning Classification, Impairment or Voting Rights**.  In the event a controversy or dispute should arise that involves issues related to the classification, impairment or voting rights of any Creditor or Equity Interest Holder under the Plan prior to the Confirmation Date, the Bankruptcy Court may, after Notice and a Hearing, determine such controversy. Without limiting the foregoing, the Bankruptcy Court may estimate for voting purposes the amount of any contingent or unliquidated Claim, the fixing or liquidation of which, as the case may be, would unduly delay the administration of the Chapter 11 Case.

## Article 5
## TREATMENT OF CLAIMS AND EQUITY INTERESTS

5.1    **Treatment of Impaired Classes.**

5.1.1    Class 2 – Colonial Saving, N.A.'s Secured Claim

The value of Colonial Savings' collateral is greater than the amount of its Claim (including interest on the claim, and reasonable fees, costs and other charges incurred by

Colonial Saving). Thus, Colonial Savings is entitled to recover its principal, plus contractual interest, and any reasonable attorneys' fees incurred by Colonial Savings. The amount of attorneys' fees must be approved by the Bankruptcy Court, after notice and hearing, except as stated below.

The Debtors will pay the principal and interest in full on the Effective Date, or as soon thereafter as practicable, from the proceeds of the Exit Financing provided by Exit Financing Lender. Upon such payment the Deed of Trust securing the Claim will be satisfied and released. Colonial Savings may then seek allowance of its reasonable and necessary attorneys' fees. Colonial Savings shall submit its request for attorneys' fees to the Debtors before filing a formal fee application. If the requested amount of attorneys' fees is less than $3,500, or is reduced to $3,500, the Debtors may agree to the attorneys' fees without the need for a formal fee application. In that event, the Debtors shall file a notice indicating that it has agreed to the attorney fees' requested and shall pay the agreed amount within 45 days of the filing of the notice. If the amount of the requested attorneys' fees is greater than $3,500, Colonial Savings shall file a fee application, which the Debtors may contest. The Debtors shall pay the Allowed amount of Colonial Savings' attorneys' fees no later than 60 days after entry of an Order allowing the amount of such fees.

### 5.1.1    Class 4 – Trench Tech's Claim

The Debtors shall pay Trench Tech the lump sum of $120,000 in cash from proceeds of the Exit Financing, and/or any other funds available to the Debtors, on the Effective Date, or as soon thereafter as practicable. Upon such payment, the Permanent Injunction shall end immediately and Trench Tech shall file a motion to dismiss the State Court Lawsuit and shall file motions to dismiss with prejudice in the Adversary Proceedings Trench Tech filed against the Debtors and Harold L. "Randy" Lenard. Furthermore, under the Effective Date and the payment of $120,000 to Trench Tech, all Claims by Trench Tech against the Debtors, legal and/or equitable, shall be discharged.

### 5.1.2    Class 5 – General Unsecured Claims against Conex

Conex shall pay Allowed General Unsecured Claims against Conex in full, without interest, over four (4) years in sixteen (16) equal quarterly installments, beginning on the first day of the calendar quarter that is at least 60 days after the Effective Date of the Plan or 60 days after the entry of a Final Order that results in the creditor's unsecured claim becoming an Allowed Claim, whichever is later.

### 5.1.3    Class 6.  General Unsecured Claims against CRP

CRP shall pay Allowed General Unsecured Claims against CRP in full, without interest, over four (4) years in sixteen (16) equal quarterly installments, beginning on the first day of the calendar quarter that is at least 60 days after the Effective Date of the Plan or 60 days after the entry of a Final Order that results in the creditor's unsecured claim becoming an Allowed Claim, whichever is later.

5.1.5    Class 7 – General Unsecured Claims against Ronald and Cathy Perdue

Ronald and Cathy Perdue shall pay Allowed General Unsecured Claims against themselves in full, without interest, over four (4) years in sixteen (16) equal quarterly installments, beginning on the first day of the calendar quarter that is at least 60 days after the Effective Date of the Plan or 60 days after the entry of a Final Order that results in the creditor's unsecured claim becoming an Allowed Claim, whichever is later.

5.1.6    Pre-Payment without Penalty.

Any or all of the Debtors may pre-pay all or ay part of any such Allowed Claims at any time without penalty.

5.2    **Treatment of Unimpaired Classes.**

The Unimpaired Classes will be treated as follows:

5.2.1    Class 1 – Allowed secured claims of *ad valorem* taxing authorities will be paid in full when due in accordance with applicable non-bankruptcy law or as soon as practicable after the Effective Date. Taxing authorities shall retain their statutory Liens until Allowed Claims are paid in full and any late payments shall be subject to statutory interest for late payment.

5.2.2    Class 3 – The Perdues shall continue to pay DATCU in accordance with the pre-petition purchase agreement and DATCU shall retain its lien rights until paid in full according to the terms of the pre-petition contract.

5.2.3    Class 4 – The holders of the Conex's Equity Interests and CRP's Equity Interests shall retain them.

### Article 6
### MEANS OF IMPLEMENTATION

6.1    **Rehabilitation.**  The Debtors will continue to operate their business and generate the cash flow needed to fund the Plan.  The termination of the Permanent Injunction shall allow CRP and Conex to accept additional work and generate more income.  In addition, the termination of the State Court Lawsuit should alleviate future legal expenses.

6.2    **Refinancing of Indebtedness**.  The Debtors will borrow up to $500,000 from Exit Financing Lender pursuant to the Exit Financing, pay off the debt to Colonial Savings, FA and use the remaining proceeds to pay the Trench Tech Claim.  A term sheet setting forth the material terms of the Exit Financing is attached hereto, incorporated herein by this reference, and marked as Exhibit "A." The Confirmation Order shall include a provision approving business terms set forth in Term Sheet.  With Exit Financing Lender's permission, the Debtors may use proceeds of the Exit Financing to pay administrative expenses of the Chapter 11 cases or other payments required to be made under the Plan.

6.3    **Additional Capital**.  Other than the Exit Financing from Exit Financing Lender, the Debtors do not anticipate the need for additional capital

6.4    **Vesting of Property of the Estate in the Reorganized Debtor**.    On the Effective Date of the Plan, and subject to the terms hereof and Exit Financing Lender's loan documents, all remaining property of the Debtors and of the Estate, and all rights to object to Claims, all avoidance actions, causes of action, alter-ego rights, derivative claims, breach of fiduciary duty claims, veil piercing rights, the right to pursue such claims and all other remaining property of the Estate as defined in § 541 of the Bankruptcy Code, all cause of action under Chapter 5 of the Bankruptcy Code shall vest in the Debtors, as reorganized, free and clear of all liens, claims and encumbrances on such property and/or rights except as otherwise expressly provided in the Plan.

6.5    **Continued Company Existence.**    From and after the Effective Date of the Plan, Conex and CRP shall continue to exist in accordance with the applicable laws of the State of Texas and the existing equity will be retained by Ronald and Cathy Perdue.

6.6    **Continuation of Operations**.    From and after the Effective Date of the Plan, the Debtors are authorized to (i) take such action as is necessary to operate its business; (ii) file claim objections; (iii) make distributions; (iv) prosecute causes of action owned by the Estate, including all claims and causes of action arising under the Bankruptcy Code; (v) pursue, liquidate and administer Estate property; (vi) file tax returns and respond to any audits; and (vii) take such other action as provided for under the Plan.

6.7    **Powers of the Reorganized Debtors**.    Subject to any express limitations, the reorganized Debtors shall have all of the rights, powers, and privileges set forth in the Plan and the Confirmation Order.    The Debtors are authorized and shall have the obligation to take all such actions as in its judgment are necessary and appropriate to effectuate the purposes of the Plan, including, but not limited to, the following:

6.7.1    Operate the Debtors' business as an ongoing enterprise;

6.7.2    Lease, purchase or sell assets outside the ordinary course of business;

6.7.3    Make all Distributions contemplated under the Plan in accordance with the Plan.

6.7.4    Open bank accounts in the names of the Debtors, invest in time or demand deposits, including certificates of deposit issued by any bank approved as a depository institution by the United States Trustee's office, United States Treasury bonds and other securities guaranteed by the full faith and credit of the United States of America or any agency thereof;

6.7.5    Supervise and administer the resolution, settlement and payment of Claims and Equity Interests and the distributions to the holders of Allowed Claims and Allowed Interests in accordance with the Plan;

6.7.6    Enter into any agreement on behalf of the Debtors required by or consistent with the Plan and perform all of the obligations required of the Debtors

under the Plan;

6.7.7   Receive, collect, and maintain proceeds from the prosecution or settlement of Causes of Action or Rights of Action;

6.7.8   Participate in or initiate any proceeding before the Bankruptcy Court or any other court of appropriate jurisdiction; participate as a party or otherwise in any administrative, arbitrative or other non-judicial proceeding; litigate claims on behalf of the Debtors, including, without limitation, all state and federal causes of action or any other litigation which constitutes an asset of the Debtors; and pursue to settlement or judgment such actions;

6.7.9   File and prosecute any Rights of Action, Claims, and Causes of Action on behalf of the Debtors, including all derivative Causes of Action, in accordance with the Plan;

6.7.10  Participate as a party in interest in any proceeding before the United States Bankruptcy Court involving the Bankruptcy Case;

6.7.11  Participate in any action before the Bankruptcy Court or any other judicial or administrative body;

6.7.12  Take actions and exercise remedies against any entity that owes money to the Debtors including, without limitation, the remedies available under any deed of trust, security agreement, promissory note, bond, guarantee or other instrument or document; make compromises regarding any deed of trust, security agreement, promissory note, bond, guarantee or other instrument or document; and declare or waive defaults regarding any deed of trust, security agreement, promissory note, bond, guarantee or other instrument or document;

6.7.13  Select and employ attorneys, accountants, brokers, advisors, consultants, agents or employees as may be necessary to assist in the administration of the affairs of the Debtors and compensate such persons on customary and commercially reasonable terms without Bankruptcy Court approval;

6.7.14  Hold any unclaimed distribution or payment to the holder of an Allowed Claim in accordance with the Plan;

6.7.15  Propose any amendment, modification or supplement to the Plan;

6.7.16  Intentionally Omitted;

6.7.17  Pay all taxes, make all tax withholdings, file tax returns and tax information returns, and make tax elections by and on behalf of the Debtors;

6.7.18  Pay all lawful expenses, debts, charges and liabilities of the Debtors;

6.7.19  Enforce all provisions of the Plan;

6.7.20  Protect, perfect and defend the title to any of the assets of the Debtors and enforce any bonds, mortgages or other obligations or liens owned by the Debtors;

6.7.21  Purchase and carry insurance coverage;

6.7.22  Establish such reserves for taxes, assessments and other expenses of administration of the Debtors (including, without limitation, the Disputed Claims Reserve) as may be necessary and appropriate for the proper operation of matters incident to the affairs of the Debtors; and

6.7.23  Exercise such other powers and duties as are necessary or appropriate in the Debtors' reasonable discretion to accomplish the purposes of the Plan.

## Article 7
## CLAIM/EQUITY INTEREST OBJECTION PROCEDURES, TREATMENT OF DISPUTED CLAIMS/EQUITY INTERESTS AND PROCEDURE FOR ASSERTING CLAIMS

7.1    **Objection Process.**  The Debtors shall have the non-exclusive right to object to the allowance of any Claims provided for under the Plan.  The Debtors may object to any or all Claims, whether scheduled or not.  The scheduling of a Claim as undisputed, non-contingent and/or liquidated shall have no preclusive effect on the Debtors.  **However, the Debtors shall respect the Settlement Agreement with Trench Tech announced in open Court and the Promissory Note for $16,250 signed with Harold L. Randy Lennard and shall not object to either such Claim.**  All objections shall be litigated to Final Order or resolved by Court-approved settlement; provided, however, the Debtors shall have the authority to compromise, settle or otherwise resolve all objections for any Claims scheduled or filed in the amount of $50,000 or less, or voluntarily reduced to such amount, without approval of the Bankruptcy Court.  Otherwise, Bankruptcy Court approval shall be required after Notice and a Hearing.  Unless otherwise ordered by the Bankruptcy Court, all objections to Claims filed by any party in interest must be filed and served no later than (i) 60 days after the later of (a) the Effective Date or (b) the date on which a proof of claim, proof of interest or request for payment is filed with the Bankruptcy Court; or (ii) such other date as may be approved by the Bankruptcy Court after Notice and a Hearing.  Any objections to Claims and Equity Interests not filed within the time periods set forth herein are subject to being overruled as untimely.

7.2    **Filing of Claims and Causes of Action.**  The Debtors shall have the exclusive right to file and prosecute any Claims, Rights of Action, and/or Causes of Action on behalf of the Debtors, including all derivative Causes of Action.  All such Claims, Rights of Action, and/or Causes of Action must be filed within one hundred and eighty (180) days of the Effective Date.  Any Claims, Rights of Action, and/or Causes of Action which the Debtors may have filed which are not filed within the time periods set forth herein are deemed waived and forever barred.  The Debtors shall have the authority to compromise, settle or otherwise resolve all Claims, Rights of Action, and/or Causes of Action filed or asserted by the Debtors in the

amount of $50,000 or less, or voluntarily reduced to such amount, without approval of the Bankruptcy Court. Otherwise, Bankruptcy Court approval shall be required after Notice and a Hearing.

7.3     **Disputed Claims Reserve.**    The Debtors may establish a Disputed Claims Reserve for the treatment of Disputed Claims.  If so, the Debtors may begin payment on Allowed Claims before all objections to Disputed Claims are resolved.  In that event, the Debtors shall deposit into a Disputed Claims Reserve an amount equal to the Pro Rata share of the Distribution allocable to such Disputed Claims, in accordance with the distribution scheme contemplated in the Plan, as if such Claims were Allowed Claims.  Amounts deposited into the Disputed Claims Reserve shall be held in trust for the benefit of the holders of Disputed Claims pending a determination of their entitlement thereto under the terms of the Plan.  Once such Disputed Claim is determined by Final Order or settlement to be an Allowed Claim, the Debtors are authorized to pay the Allowed Amount of such Claim without further approval from or notice to any Person or entity.

7.4     **Distributions to Holders of Disputed Claims.**    If the Debtors establish a Disputed Claims Reserve, then within thirty (30) days after such time as a Disputed Claim becomes an Allowed Claim, any Distributions reserved for such Allowed Claim shall be released from the Disputed Claims Reserve, if any, and delivered to the holder of such Allowed Claim in an amount proportionate to the Allowed Amount of any such Claim.  In the event that the Disputed Claim is disallowed in whole or in part, or otherwise settled in amount less than the Disputed Claim amount, the disallowed or reduced portion of such Claim shall be distributed from the Disputed Claim Reserve to holders of Allowed Claims as Available Cash on the next Interim Distribution Date in accordance with the Plan without further approval from or notice to any Person or entity.

7.5     **Provisions Governing Distributions.**

7.5.1 **Record Date for Claims and Equity Interests.**  The record date for Distributions to holders of Allowed Claims and Allowed Interests under the Plan shall be the date the Bankruptcy Court enters its order approving the Disclosure Statement. For purposes of Distributions to holders of Allowed Claims, the Debtors will rely on the claims register maintained by the Clerk for proofs of claim filed in the Chapter 11 Case except to the extent a notice of transfer of Claim or Equity Interest has been filed with the Bankruptcy Court prior to the record date pursuant to Bankruptcy Rule 3001. For purposes of Distributions on account of Equity Interests, the Debtors will rely on the relevant proofs of interest filed in the claims register maintained by the Clerk, and any official records of the Debtors reflecting ownership or transfers of Equity Interests.

7.5.2 **Delivery of Distributions to Holders of Allowed Claims.** Subject to Rule 9010, Distributions to holders of Allowed claims will be made at the address of each such holder as set forth on the proofs of cliam filed by such holders, or at the last known address of such holder if no proof of cliam is filed, unless the holder of Allowed Claim has otherwise notified the Debtors in writing of a change of address.  If any holder's Distribution is returned as undeliverable, it will be treated in accordance with Article 8.6.4 of the Plan. The Debtors may, but shall not be required to make any

Distribution of less than $25.

7.5.3    **Delivery of Distributions to Holders of Allowed Interests.**
Distributions to holders of Allowed Interests, to the extent they are entitled to
distributions under the Plan, will be made at the address of the registered holder of each
such Equity Interest as set forth in the relevant proof of interest filed in the claims
register maintained by the Clerk or the address shown in the Debtors' Schedules, unless
the holder of the Allowed Interest has otherwise notified the Debtors in writing of a
change of address. If any holder's distribution is returned as undeliverable, it will be
treated in accordance with Article 8.6.4 of the Plan. The Debtors may, but shall not be
required to, make any Distribution of less than $25.

7.5.4    **Unclaimed Distributions.**    All claims for undeliverable Distributions
must be made no later than the 90th day following the date of such Distribution. After
such date, all unclaimed Distributions will revert to the Debtors for distribution in
accordance with the Plan and the remaining Claim or Equity Interest of any holder with
respect to such Distribution will be discharged and forever barred.

7.5.5    **Uncashed Checks.**    Checks issued in respect of Allowed Claims and/or
Equity Interests will be null and void if not negotiated within ninety (90) days after the
date of issuance thereof. Distributions with respect to such un-negotiated checks will
revert to the Debtors for distribution in accordance with the Plan and the remaining
Claim or Equity Interest of any holder with respect to such Distribution will be
discharged and forever barred.

### Article 8
### EFFECT OF CONFIRMATION

8.1    **Legally Binding Effect**.    The provisions of the Plan shall bind all Creditors and
Equity Interest Holders, whether or not they accept the Plan. On and after the Effective Date,
all holders of Claims shall be precluded and enjoined from (i) asserting any Claim against the
Debtors, the Estates or Reorganized Debtors or their assets or properties based on any
transaction or other activity of any kind that occurred prior to the Confirmation Date except as
permitted under the Plan; (ii) asserting any derivative claims, including claims against third
parties asserting alter ego claims, breach of fiduciary duty claims, fraudulent transfer claims or
any other type of successor liability; and (iii) otherwise interfering with the Reorganized
Debtors' administration of assets and claims under the Plan. The entry of the Confirmation
Order will operate as a general resolution with prejudice and discharge, as of the Effective Date,
of all Claims and Equity Interests dealt with under the Plan, any other Claim against the
Debtors, known or unknown, that exist as of the entry of the Confirmation Order, and all
pending legal proceedings, if any, against the Debtors and its assets and properties and any
proceedings not yet instituted against the Debtors or its assets and properties, except as
otherwise provided in the Plan, concerning Claims and Equity Interests dealt with under the
Plan.

8.2    **Discharge.**    Pursuant to 11 U.S.C. § 1141(d), except as otherwise provided

herein, on the Effective Date, the Debtors will receive a discharge all of debts that arose before confirmation of the Plan, and any debt of an kind specified in 11 U.S.C. § 502(g), (h), or (j), whether or not a proof of claim was filed or deemed filed, such claim is allowed under 11 U.S.C. § 502, or the holder of such claim has accepted the Plan. However, confirmation of the Plan will does not discharge any claim for unpaid U.S. Trustee's fees, post-petition taxes, or for professional compensation or reimbursement of expenses of any Court-appointed professionals. **Notwithstanding Section 8.1 and this Section 8.2, the Class 4 Trench Tech Claim shall not be discharged until paid in full in accordance with the Plan.**

8.3    **Limited Protection of Certain Parties in Interest.**

Intentionally omitted.

8.4    **Indemnification.**

Intentionally omitted.

8.5    **Continuation of Anti-Discrimination Provisions of the Bankruptcy Code.** A Governmental Unit may not deny, revoke, suspend, or refuse to renew a license, permit, charter, franchise, or other similar grant to, condition such a grant to, or discriminate with respect to such a grant against, the Debtors, or another Person with whom the Debtors have been or are associated or affiliated, solely because of the commencement, continuation, or termination of the case or because of any provision of the Plan or the legal effect of the Plan, and the Confirmation Order will constitute an express injunction against any such discriminatory treatment by a Governmental Unit. All licenses, permits, charters, franchises, or other similar grants to the Debtors shall be transferred and assigned on the Effective Date (which transfer and assignment is without the assumption of any liabilities arising prior to the Effective Date which liabilities arise out of such license, permit, charter, franchise or similar grant) to the Debtors.

8.6    **Preservation of Claims and Rights.** Confirmation of the Plan effects no settlement, compromise, waiver or release of any Claim, Cause of Action, Right of Action or claim for relief by the Debtors unless the Plan or the Confirmation Order specifically and unambiguously so provides. The non-disclosure or non-discussion of any particular Claim by the Debtors, Cause of Action, Right of Action or claim for relief is not and shall not be construed as a settlement, compromise, waiver, or release of any such Claim, Cause of Action, Right of Action or claim for relief. Unless specifically and unambiguously compromised, settled or released herein, all Claims, Causes of Action, and Rights of Action belonging to the Debtors on the date before confirmation of the Plan shall be preserved for the benefit of the Estate.

**The Debtors reserve any and all Claims and rights each may have against any and all third parties, whether such claims and rights arose before, on or after the Petition Date, the Confirmation Date, the Effective Date, the Record Date and/or any Distribution date, including, without limitation, any and all Causes of Action, Rights of Action and/or claims for relief that the respective Debtors have against (i) any insurer and/or insurance policies in which either the respective Debtors and/or its**

current or former personnel have an insurable or other interest in or right to make a claim against, any other of the respective Debtors' insurers; and (ii) any recipient of a transfer identified in the respective Debtors' statements of financial affairs, including any amendments thereto, filed in this Chapter 11 Case; and (iii) any person for claims of breach of fiduciary duty, breach of contract, fraudulent transfer, preferential transfer, unauthorized post-petition transfer under 11 U.S.C. § 549, turnover under 11 U.S.C. §§ 542 and 543, subordination, re-characterization of debt to equity, malpractice, constructive trust, disgorgement, counter-claims, claims to determine the extent and validity of liens under 11 U.S.C. § 506, and any other claims that the Estate may have against anyone. The entry of the Confirmation Order shall not constitute *res judicata* or otherwise bar, estop or inhibit any actions by the reorganized Debtors, acting on behalf of the respective Debtors or the respective Estate relating to any Claims, Causes of Action or Rights of Action referred to herein. Except as specifically set forth in the Plan, the reorganized Debtors shall be appointed as and shall constitute the sole and exclusive representative of the respective Estates for purposes of retaining, asserting and/or enforcing any Causes of Action or Rights of Action under § 1123(b)(3)(B) of the Bankruptcy Code. On the Effective Date, the reorganized Debtors shall be substituted as a party of record in all pending litigation brought by or against the Debtors without need for further order of the Bankruptcy Court.

## ARTICLE 9
## CONFIRMATION OF THE PLAN

9.1 **Confirmation Hearing.** Section 1128(a) requires the Bankruptcy Court, after notice, to hold a hearing on confirmation of the Plan ("Confirmation Hearing"). The Confirmation Hearing will be scheduled before the Honorable Mark X. Mullin, United States Bankruptcy Judge for the Northern District of Texas, at a date and time determined by the Bankruptcy Court. Notice of the Confirmation Hearing will be provided to Creditors and parties in interest in accordance with the applicable service rules. The Confirmation Hearing may be adjourned from time to time by the Bankruptcy Court without further notice except an announcement made at the Confirmation Hearing or any adjournment thereof.

Section 1128(b) provides that any party in interest may object to confirmation of the Plan. However, an impaired Creditor, who votes to accept the Plan, may not have standing to object to the Plan. Objections to confirmation of the Plan are governed by Bankruptcy Rule 9014 and any applicable Local Rules of the Bankruptcy Court. The deadline for filing objections to confirmation of the Plan will be determined once the Confirmation Hearing is set by the Bankruptcy Court. Objections to confirmation must be filed with the Clerk of Court.

**UNLESS AN OBJECTION TO CONFIRMATION IS TIMELY FILED AND SERVED, IT WILL NOT BE CONSIDERED BY THE BANKRUPTCY COURT.**

9.2 **Statutory Requirements for Confirmation of the Plan.** At the Confirmation Hearing, the Bankruptcy Court will determine whether the Bankruptcy Code's requirements for confirmation of the Plan have been satisfied, in which event the Bankruptcy Court will enter an order confirming the Plan. As set forth in § 1129 of the Bankruptcy Code, the

requirements are as follows:

9.2.1   The Plan complies with the applicable provisions of the Bankruptcy Code.

9.2.2   The proponents of the Plan complies with the applicable provisions of the Bankruptcy Code.

9.2.3   The Plan has been proposed in good faith and not by any means forbidden by law.

9.2.4   Any payment made or to be made by the Plan proponent, or by a person issuing securities or acquiring property under the Plan, for services or for costs and expenses in or in connection with the case, or in connection with the Plan and incident to the case, has been approved by, or is subject to the approval of, the Court as reasonable.

9.2.5   The proponents of the Plan have disclosed the identity and affiliations of any individual proposed to serve, after confirmation of the Plan, as a director, officer, or voting trustee of the Debtors, any affiliate of the Debtors participating in a joint Plan with the Debtors, or a successor to the Debtors under the Plan; and the appointment to, or continuance in, such office of such individual, is consistent with the interests of Creditors and with public policy; and the proponent of the Plan has disclosed the identity of any insider that will be employed or retained by the Debtors, and the nature of any compensation for such insider.

9.2.6   Any governmental regulatory commission with jurisdiction, after confirmation of the Plan, over the rates of the Debtors, has approved any rate change provided for in the Plan, or such rate change is expressly conditioned on such approval.

9.2.7   With respect to each class of impaired claims or equity interests:

9.2.7.1   each holder of a claim or interest of such class:

(i)  has accepted the Plan; or

(ii) will receive or retain under the Plan on account of such claim or interest property of a value, as of the effective date of the Plan, that is not less than the amount that such holder would so receive or retain if the Debtors were liquidated under Chapter 7 of the Bankruptcy Code on such date; or

9.2.7.2   if § 1111(b)(2) of the Bankruptcy Code applies to the claims of such class, the holder of a claim of such class will receive or retain under the Plan on account of such claim property of a value, as of the effective date of the Plan, that is not less than the value of such holder's interest in the estate's interest in the property that secured such claims.

9.2.8    With respect to each class of claims or interests:

9.2.8.1    such class has accepted the Plan; or

9.2.8.2    such class is not impaired under the Plan;

9.2.9    Except to the extent that the holder of a particular claim has agreed to a different treatment of such claim, the Plan provides that:

9.2.9.1    with respect to a claim of a kind specified in § 507(a)(1) or § 507(a)(2) of the Bankruptcy Code, on the effective date of the Plan, the holder of such claim will receive on account of such claim cash equal to the allowed amount of such claim;

9.2.9.2    with respect to a class of claims of a kind specified in §§ 507(a)(3), 507(a)(4), 507(a)(5) or 507(a)(6) of the Bankruptcy Code, each holder of a claim of such class will receive:

(i)    if such class has accepted the Plan, deferred cash payments of a value, as of the effective date of the Plan, equal to the allowed amount of such claim; or

(ii)    if such class has not accepted the Plan, cash on the effective date of the Plan equal to the allowed amount of such claim; and

9.2.9.3    with respect to a claim of a kind specified in § 507(a)(8) of the Bankruptcy Code, the holder of a claim will receive on account of such claim deferred cash payments, over a period not exceeding six years after the date of assessment of such claim, of a value, as of the effective date of the Plan, equal to the allowed amount of such claim.

9.2.10    If a class is impaired under the Plan, at least one class of claims that is impaired has accepted the Plan, determined without including any acceptance of the Plan by any insider.

9.2.11    Confirmation of the Plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the plan proponent or any successor to the plan proponent under the Plan, unless such liquidation or reorganization is proposed in the Plan.

The Debtors believe that the Plan satisfies all the statutory requirements of Chapter 11 of the Bankruptcy Code, that the Debtors have complied or will have complied with all of the requirements of Chapter 11, and that the proposal of the Plan is made in good faith.

The Debtors further believe that the holders of all Claims impaired under the Plan will receive payments or distributions under the Plan having a present value as of the Effective Date in amounts not less than the amounts likely to be received by such

holders if the Debtors were liquidated in a case under Chapter 7 of the Bankruptcy Code.

Finally, the Debtors do not believe that the confirmation of the Plan will likely be followed by the need for further financial reorganization of the Debtors.

9.3    **Cramdown.** In the event that any impaired class of Claims does not accept the Plan, the Bankruptcy Court may still confirm the Plan if, as to each impaired class which has not accepted the Plan, the Plan does not discriminate unfairly and is "fair and equitable." A plan of reorganization does not discriminate unfairly within the meaning of the Bankruptcy Code if no class receives more than it is legally entitled to receive for its claims or equity interests.

"Fair and equitable" has different meanings with respect to the treatment of secured and unsecured claims. As set forth in § 1129(b)(2) of the Bankruptcy Code, those meanings are as follows:

9.3.1  With respect to a class of secured claims, the Plan provides:

9.3.1.1    (i) that the holders of such claims retain the liens securing such claims, whether the property subject to such liens is retained by the Plan Proponent or transferred to another entity, to the extent of the allowed amount of such claims; and

(ii) that each holder of a claim of such class receive on account of such claim deferred cash payments totaling at least the allowed amount of such claim, of a value, as of the effective date of the Plan, of at least the value of such holder's interest in the estate's interest in such property;

9.3.1.2    for the sale, subject to § 363(k) of the Bankruptcy Code, of any property that is subject to the Liens securing such claims, free and clear of such liens, with such liens to attach to the proceeds of such sale, and the treatment of such liens on proceeds under clause (a) and (b) of this subparagraph; or

9.3.1.3    for the realization by such holders of the indubitable equivalent of such claims.

9.3.2    With respect to a class of unsecured claims, the Plan provides:

9.3.2.1    that each holder of a claim of such class receive or retain on account of such claim property of a value, as of the effective date of the Plan, equal to the allowed amount of such claim; or

9.3.2.2    the holder of any claim or interest that is junior to the claims of such class will not receive or retain under the Plan on

account of such junior claim or interest any property.

9.3.3      With respect to a class of interests, the Plan provides:

9.3.3.1    that each holder of an interest of such class receive or retain on account of such interest property of a value, as of the effective date of the Plan, equal to the greatest of the allowed amount of any fixed liquidation preference to which such holder is entitled, any fixed redemption price to which such holder is entitled, or the value of such interest; or

9.3.3.2    the holder of any interest that is junior to the interests of such class will not receive or retain under the Plan on account of such junior interest any property.

The Bankruptcy Court will determine at the Confirmation Hearing whether the Plan is fair and equitable with respect to, and does not discriminate unfairly against, any rejecting impaired class of Claims. The Debtors believe that the Bankruptcy Court will find these requirements satisfactory and will confirm the Plan.

9.4    **Conditions Precedent to Effective Date.**    The following are conditions precedent to the occurrence of the Effective Date: (i) the Confirmation Order shall have been entered by the Bankruptcy Court; (ii) the form of all documents necessary or appropriate to give effect to the transactions contemplated under the Plan, if any, have been approved and executed; (iii) all required consents, approvals, and authorizations, if any, have been obtained; (iv) there shall be no stay of the Confirmation Order in effect; (v) the Debtors shall have determined that the Debtors are holding good and available funds for payment of Claims under the Plan; and (vi) all other actions, documents and agreements necessary to implement the Plan shall have been effected or executed.

The Effective Date shall be the day selected by the Debtors that is no earlier that the first Business Day after (i) the date the Confirmation Order has been entered; and (ii) all conditions specified in Section 9.4 have been satisfied or waived.

9.5    **Annulment of Plan if Conditions Not Waived or Satisfied.**    The Debtors reserve the right to waive any of the conditions precedent to the Effective Date. If any of the conditions precedent are not waived, and are not satisfied within six months of the Confirmation Date or can no longer occur, the Debtors shall convert the Chapter 11 Cases to Chapter 7 and remaining property shall be administered by a Chapter 7 trustee.

9.6    **Retention of Jurisdiction by Bankruptcy Court.**    The Court shall retain and have exclusive jurisdiction over the Chapter 11 Cases to the maximum extent provided by law for the follow purposes following the Confirmation Date: (a) to determine any and all objections to the allowance and classification of Claims or Equity Interests; (b) to determine the validity and priority of any Lien; (c) to determine the Allowed Amount of any Claim, whether secured or unsecured; (d) to allow any and all applications for allowances of compensation and reimbursement of expenses payable from the Estate; (e) to determine any

and all applications or motions pending before the Bankruptcy Court on the Effective Date of the Plan; (f) to consider and approve any modification of the Plan, remedy any defect or omission, or reconcile any inconsistency in the Plan or any order of the Court, including the Confirmation Order; (g) to hear and determine all controversies, suits and disputes that may arise in connection with the interpretation, enforcement or consummation of the Plan, the Confirmation Order, any transactions or payments contemplated thereby or any agreement, instrument or other document governing or related to any of the foregoing; (h) to hear and adjudicate, subject to applicable law, and enter a final judgment resolving, any Avoidance Actions initiated by the Debtors, if necessary, proposed findings of fact and conclusions of law; (i) to consider and act on the compromise and settlement of any claim or cause of action by or against the Debtors, subject to the limitations on amount in controversy set forth in Article 8 of the Plan; (j) to issue orders in aid of execution and implementation of the Plan and the Confirmation Order, to the extent authorized by 11 U.S.C. § 1142 or provided by the terms of the Plan; (k) to hear and determine matters concerning federal, state or local taxes in accordance with §§ 346, 505 or 1146 of the Bankruptcy Code; and (m) to grant a final decree or enter an order closing the Chapter 11 Case and discharging the Debtors.

In no event shall the provisions of the Plan be deemed to confer in the Bankruptcy Court jurisdiction greater than that established by the provisions of 28 U.S.C. §§ 157 and 1334.

## ARTICLE 10
## COMPROMISES AND SETTLEMENTS

10.1   **Effect of Confirmation Order.**   Pursuant to Bankruptcy Rule 9019 and applicable provisions of the Bankruptcy Code, and in consideration for the classification, distribution and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all controversies resolved pursuant to the Plan. The entry of the Confirmation Order shall constitute the Bankruptcy Court's approval of each of the foregoing compromises or settlements, and all other compromises and settlements provided for in the Plan, and the Bankruptcy Court's findings shall constitute its determination that such compromises and settlements are in the best interests of the Debtors, the Estates, Creditors and other parties in interest, and are fair, equitable and within the range of reasonableness. However, confirmation of the Plan does not compromise or settle any claims, Causes of Action, or Rights of Action held by the Debtors, except as expressly provided by the Plan. Nor does confirmation of the Plan affect the allowance or disallowance of Claims or Equity Interests, except as expressly provided by the Plan.

## ARTICLE 11
## MISCELLANEOUS PROVISIONS

11.1   **Rejection of Executory Contracts and Unexpired Leases**.   All executory contracts and unexpired leases are deemed to be rejected as of the Effective Date except with respect to any executory contract or unexpired leases as to which the Debtors have filed a Motion to Assume such executory contract or unexpired lease no later than twenty-one (21) calendar days before the commencement of a hearing to consider confirmation of the Plan. The Debtors may file a single motion listing multiple executory contracts and unexpired leases to be assumed. As to an executory contract or unexpired lease that is assumed, the Debtors shall be

deemed to have made any required cure payments unless a written objection is filed before at least seven (7) days before the commencement of the confirmation hearing.  If such executory contract or unexpired lease is rejected, the counterparty shall have thirty days from the effective date of rejection to file a proof of claim for rejection damages.

11.2  **Bar Date for Administrative Claims.**  No Administrative Claim, other than Professional Fees and United States Trustee fees, will be paid unless the holder of such Administrative Claim has filed an application for payment of such Administrative Claim on or before the Administrative Claim Bar Date.  Upon the filing of any application for payment, the entity seeking payment of an Administrative Claim shall provide notice by United States Mail in accordance with the Bankruptcy Rules.  Any Administrative Claim, other than Professional Fees and United States Trustee fees, not filed in accordance with this section shall be barred and the Debtors, and the Estates shall have no liability for payment of any such Administrative Claim.

11.3  **Objections to Administrative Claims.**  Objections to Applications for payment of Administrative Claims may be filed by any party in interest.  In order to be considered, such objections must be filed on or before the 24th day following the date on which the application was filed.  Any objections will be determined by the Bankruptcy Court.

11.4  **Payment of Professional Fees.**  Each holder of a Professional Fee Claim shall be paid in respect of such Professional Fee Claim in Cash, in full, on the Effective Date, or, if such Claim has not been approved by the Bankruptcy Court on or before the Effective Date, promptly after Bankruptcy Court approval of the Professional Fee Claim by a Final Order.  Final fee applications for any Professional Fee Claim that have not been approved as of the Effective Date shall be filed within 45 days of the Effective Date and such applications and objections thereto (if any) shall be filed in accordance with and comply in all respects with the Bankruptcy Code, the Bankruptcy Rules, and any applicable Orders of the Bankruptcy Court.  The failure to file an application by the foregoing deadline shall constitute a waiver of all such Professional Fee Claim.  The Debtors and the holder of an Allowed Professional Fee Claim may mutually agree to different payment terms, such a payout over time.

11.5  **Payment of United States Trustee Fees.**  Within 30 days of the date that such payments are due, the Debtors shall pay all amounts owing to the United States Trustee as fees and costs imposed in connection with this Chapter 11 Case.

11.6  **Directive to State Agencies.**  The Confirmation Order may be filed in the real property records of Tarrant County as evidence of the Debtors' interest in such property.

11.7  **Satisfaction of Liabilities.**  The rights afforded in the Plan and the treatment of all Claims and Equity Interests herein shall be in exchange for and in complete satisfaction and release of all Claims and Equity Interests of any nature whatsoever against the Debtors and/or the Estates, as well as assets, properties, and interests in property of the Debtors and/or the Estates. The Debtors shall not be responsible for any pre-Effective Date obligations of the Debtors except those expressly assumed by the Debtors under the Plan.

11.8    **Warranty of Transfers from Debtors.**    **All property, whether real or personal, to be transferred by the Debtors on behalf of the Debtors to any Person or entity under the Plan, is transferred "as is, where is," with no representation or warranty of any kind except that the Debtors holds indefeasible title to such property and all transfers shall be transferred free and clear of all liens, claims and encumbrances pursuant to 11 U.S.C. § 363(f) and 11 U.S.C. § 1123(a)(5).**

11.9    **Compliance with Tax Requirements.**    In connection with each distribution with respect to which the filing of an information return (such as an Internal Revenue Service Form 1099 or 1042) or withholding is required, the Debtors shall file such information return with the Internal Revenue Service and provide any required statements in connection therewith to the recipients of such distribution or effect any such withholding and deposit all moneys so withheld as required by law.    With respect to any Person from whom a tax identification number, certified tax identification number or other tax information required by law to avoid withholding has not been received by the Debtors within thirty (30) days from the date of such request, the Debtors may, at their option, withhold the amount required and distribute the balance to such Person or decline to make such distribution until the information is received.

11.10    **Amendment of the Plan.**  The Plan may be amended or modified by the Debtors before, or after, the Effective Date, as provided in § 1127 of the Bankruptcy Code.

11.11    **Timing of Distributions.**    No payment required by the Plan shall be considered late or otherwise result in a default unless the Debtors has failed to make the payment after the passage of 30 days following the receipt by the Debtors of a written notice advising that a payment has not been received in accordance with the times set forth in this paragraph.

11.12    **Enforcement of Subordination Agreements/Settlement Agreements.**    Any written (i) subordination agreement between holders of Allowed Claims and (ii) settlements approved by the Bankruptcy Court during this Chapter 11 Case will be honored according to their terms for the purposes of distribution under the Plan.

11.13    **Filing of Documents in Public Records.**  Pursuant to § 1146 of the Bankruptcy Code, the issuance, transfer or exchange of a security or the making of an instrument of transfer under the Plan (including, without limitation, the filing of any mortgage, deed of trust, security agreement, uniform commercial code financing statement or other similar document) shall not be taxed under any law imposing a stamp tax or similar tax.  Under the Plan, all state or local governmental officials or agents are directed to forego the collection of any such tax or governmental assessment and to accept for Filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

11.14    **Right to Seek Further Orders.**  The Debtors, if, and to the extent necessary, will seek such orders, judgments, injunctions, regulatory approvals, and rulings that may be required to carry out and further the intentions and purposes, and give full effect to the provisions, of the Plan.

11.15 **Regulatory Approvals.** As the Plan is not intended to modify or supplant any regulatory authority over the Debtors, all regulatory approvals required in connection with the Plan will be sought and obtained.

11.16 **Withdrawal of Plan.** The Debtors reserve the right to withdraw the Plan at any time prior to the Confirmation Date.

11.17 **Filing of Additional Documentation.** On or before the Effective Date, the Debtors may file with the Bankruptcy Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

11.18 **Implementation.** The Debtors shall be authorized to perform all reasonable, necessary and authorized acts to consummate the terms and conditions of the Plan.

11.19 **Substantial Consummation.** On the Effective Date, the Plan shall be deemed to be substantially consummated under Bankruptcy Code §§ 1101 and 1127(b).

11.20 **Further Effect of Confirmation.** Intentionally Omitted.

11.21 **Dates.** The provisions of Bankruptcy Rule 9006 shall govern the calculation of any dates or deadlines referenced in the Plan.

11.22 **Governing Law.** Except to the extent that the Bankruptcy Code or Bankruptcy Rules are applicable, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Texas, without giving effect to any conflicts of law principles.

11.23 **Conflict.** Except as otherwise provided in the Plan, to the extent the Confirmation Order and/or the Plan are inconsistent with the Disclosure Statement or any other agreement entered into between the respective Debtors and any third party, the Plan and Confirmation Order control over any inconsistent language the Disclosure Statement.

11.24 **Severability.** The provisions of the Plan shall not be severable unless such severance is agreed to by the Debtors and such severance would constitute a permissible modification of the Plan pursuant to § 1127 of the Bankruptcy Code.

11.25 **Setoffs.** The Debtors may, but shall not be required to, set off against any Claims and the payments or Distributions to be made pursuant to the Plan in respect of such Claims, any and all debts, liabilities and claims of every type and nature whatsoever that the Estates or the Debtors may have against the Holder of any Claim, but neither the failure to do so nor the Allowance of any such Claims, whether pursuant to the Plan or otherwise, shall constitute a waiver or release by the Debtors or the Debtors of any such Claims they may have against such Holder of any Claim, and all such claims shall be reserved for and retained by the Debtors.

11.26 **Other Considerations.** The Plan affords holders of Claims the potential for the greatest realization on the respective Debtors' assets and, therefore, is in the best interests of such holders. If the Plan is not confirmed, however, the theoretical alternatives include: (a)

continuation of the Chapter 11 Cases; (b) alternative plans of reorganization/liquidation; (c) liquidation of the respective Debtors' non-exempt assets under Chapter 7 of the Bankruptcy Code; and (d) dismissal of the Chapter 11 Case.

11.27   **Feasibility of the Plan.**  The Debtors project that they will be able to make payments required by the Plan and that further financial reorganization will be unnecessary. The Debtors have prepared projections showing its ability to do so.

11.28   **Alternative Plans of Liquidation.**  If the Plan is not confirmed, the Debtors or another party in interest in the case could attempt to formulate and propose a different plan or plans. Such plans might, theoretically, involve some other form of reorganization or liquidation of the Debtors' operations and assets. Any alternative plans, however, would likely result in additional administrative expenses to the estate and would provide little or no benefit. The Plan proposed by the Debtors is straightforward, meets the requirements of § 1129, and provides the best outcome for Creditors.

11.29   **Liquidation Under Chapter 7.**  The Debtors do not believe that the case should be converted to Chapter 7. Conversion to Chapter 7 would end the Debtors' business and result additional administrative expenses attributable to statutory trustee fees and professional fees for the Chapter 7 trustee's professionals. The Debtors have no unencumbered assets that are not exempt. Colonial Saving would be paid from the sale of the building or CRP's machinery, but the Debtors' unsecured Creditors would receive nothing. Under the Plan, all creditors will be paid in full.  The Plan is far superior to a liquidation in Chapter 7.

11.30   **Risk Factors.**  Both confirmation of the Plan, and consummation of the Plan, are subject to certain risks. The Debtors cannot predict all of the factors that may influence the Debtors' future operations.  There is always some risk involved in the operation of a business and success cannot be guaranteed.  In addition, there are certain risks inherent in the administration process under the Bankruptcy Code.  If certain standards set forth in the Bankruptcy Code are not met, the Bankruptcy Court will not confirm the Plan even if Creditors and Equity Interest holders accept the Plan. Although the Debtors believe that the Plan meets such standards, there can be no assurance that the Bankruptcy Court will reach the same conclusion. If the Bankruptcy Court were to determine that such requirements were not met, it could require the Debtors to re-solicit acceptances, which could delay and/or jeopardize confirmation of the Plan. The Debtors believe that the solicitation of votes on the Plan will comply with § 1126(b) and that the Bankruptcy Court will confirm the Plan. The Debtors cannot, however, provide assurance that modifications of the Plan will not be required to obtain confirmation of the Plan, or that such modifications will not require a re-solicitation of acceptances.

11.31   **Taxation.**

**NOTHING STATED HEREIN SHALL BE CONSIDERED TAX ADVICE.  HOLDERS OF CLAIMS AGAINST AND EQUITY INTERESTS IN THE DEBTORS ARE THEREFORE URGED TO CONSULT WITH THEIR TAX ADVISORS REGARDING THE FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES OF THE TRANSACTIONS DESCRIBED HEREIN AND IN THE PLAN.**

11.31.1 **Introduction.** The following discussion summarizes certain federal income tax consequences of the transactions described herein and in the Plan. This discussion is for informational purposes only and does not constitute tax advice. This summary is based upon the Internal Revenue Code and the Treasury Regulations promulgated thereunder, including judicial authority and current administrative rulings and practice as of the date of this Disclosure Statement and will not be updated for subsequent tax or factual developments. Neither the impact on foreign holders of claims and equity interests nor the tax consequences of these transactions under state and local law is discussed. Also, special tax considerations not discussed herein may be applicable to certain classes of taxpayers, such as financial institutions, broker-dealers, insurance companies, mutual funds, regulated investment companies, real estate investment trusts, trusts, S corporations, dealers and traders in securities and currencies, partnerships and other entities classified as partnerships for federal tax purposes and tax-exempt organizations. Furthermore, due to the complexity of the transactions contemplated in the Plan, and the unsettled status of many of the tax issues involved, the tax consequences described below are subject to significant uncertainties including subsequent legislative and other tax changes. No opinion of counsel has been obtained and no ruling has been requested from the Internal Revenue Service ("IRS") on these or any other tax issues. There can be no assurance that the IRS will not challenge any or all of the tax consequences of the Plan, or that such a challenge, if asserted, would not be sustained.

11.31.2 **Tax Consequences to Creditors.**

**In General**. The federal income tax consequences of the implementation of the Plan to a holder of a Claim will depend, among other things, on: (a) whether its Claim constitutes a debt or security for federal income tax purposes, (b) whether the Claimant receives consideration in more than one tax year, (c) whether the Claimant is a resident of the United States, (d) whether all the consideration by the Claimant is deemed to be received by that Claimant as part of an integrated transaction, (e) whether the Claimant utilizes the accrual or cash method of accounting for tax purposes, and (f) whether the holder has previously taken a bad debt deduction or worthless security deduction with respect to the Claim.

**Gain or Loss on Exchange**. Generally, a holder of an Allowed Claim will realize a gain or loss on the exchange under the Plan of its Allowed Claim for cash and other property in an amount equal to the difference between (i) the sum of the amount of any cash and the fair market value on the date of the exchange of any other property received by the holder (other than any consideration attributable to accrued but unpaid interest on the Allowed Claim), and (ii) the adjusted basis of the Allowed Claim exchanged therefore (other than basis attributable to accrued but unpaid interest previously included in the holder's taxable income). Any gain recognized generally will be a capital gain (except to the extent the gain is attributable to accrued but unpaid interest or accrued market discount, as described below) if the Claim was a capital asset in the hand of an exchanging holder, and such gain would

be a long-term capital gain if the holder's holding period for the Claim surrendered exceeded one (1) year at the time of the exchange.

The tax treatment of an Allowed Claim for accrued unpaid interest will depend on the Claimant's tax basis in such Claim, which primarily depends on whether the Claimant has previously recognized income for the accrual of such interest and/or recognized a loss with respect to same. Any such holders should consult with their tax advisors regarding the tax treatment of any such accrued unpaid interest.

Any loss recognized by a holder of an Allowed Claim will be a capital loss if the Claim constitutes a "security" for federal income tax purposes or is otherwise held as a capital asset. For this purpose, a "security" is a debt instrument with interest coupons or in registered form.

### 11.31.3  <u>Information Reporting and Backup Withholding</u>.

Under the backup withholding rules of the Internal Revenue Code, holders of Claims and Equity Interest Holders may be subject to backup withholding with respect to payments made pursuant to the Plan unless such holder (i) is a corporation or comes within certain other exempt categories and, when required, demonstrates this fact, or (ii) provides a correct taxpayer identification number and certifies under penalties of perjury that the taxpayer identification number is correct and that the holder is not subject to backup withholding because of a failure to report all dividends and interest income. Any amount withheld under these rules will be credited against the holder's federal income tax liability. Holders of Claims and Equity Interests may be required to establish exemption from backup withholding or to make arrangements with respect to the payment of backup withholding.

### 11.31.4  <u>Importance of Obtaining Professional Assistance</u>.

**THE FOREGOING IS INTENDED TO BE A SUMMARY ONLY AND IS NOT A SUBSTITUTE FOR CAREFUL TAX PLANNING WITH A TAX PROFESSIONAL. THE FEDERAL, STATE, AND FOREIGN TAX CONSEQUENCES OF THE PLAN ARE COMPLEX AND, IN MANY AREAS, UNCERTAIN. TO COMPLY WITH TREASURY DEPARTMENT CIRCULAR 230, YOU ARE HEREBY NOTIFIED THAT (A) ANY DISCUSSION OF U.S. FEDERAL TAX ISSUES CONTAINED OR REFERRED TO IN THIS DISCLOSURE STATEMENT, THE PLAN, OR ANY RELATED MATERIALS, IS NOT INTENDED OR WRITTEN TO BE USED, AND CANNOT BE USED BY YOU, FOR THE PURPOSE OF AVOIDING PENALTIES THAT MAY BE IMPOSED ON YOU UNDER THE INTERNAL REVENUE CODE OF 1986, AS AMENDED; AND (B) ANY SUCH DISCUSSIONS ARE BEING USED ONLY IN CONNECTION WITH SATISFYING THE REQUIREMENTS IMPOSED UNDER THE BANKRUPTCY CODE FOR DISCLOSURE STATEMENTS, AND (C) YOU**

SHOULD SEEK ADVICE FROM AN INDEPENDENT TAX ADVISOR WITH RESPECT TO YOUR FEDERAL, STATE, LOCAL AND FOREIGN TAX CONSEQUENCES BASED ON YOUR PARTICULAR CIRCUMSTANCES.

## ARTICLE 12
## CAUSES OF ACTION

**12.1    Preferences.** Under the Bankruptcy Code, the Debtors may recover certain preferential transfers of property, including cash, made while insolvent during the 90 days immediately prior to the filing of its bankruptcy petition with respect to pre-existing debts, to the extent the transferee received more than it would have in respect of the pre-existing debt had the Debtors been liquidated under Chapter 7 of the Bankruptcy Code. In the case of "insiders," the Bankruptcy Code provides for a one-year preference period. There are certain defenses to such recoveries. Transfers made in the ordinary course of the respective Debtors' and transferee's business according to the ordinary business terms in respect of debts less than 90 days before the filing of a bankruptcy are not recoverable. Additionally, if the transferee extended credit subsequent to the transfer (and prior to the commencement of the bankruptcy case), such extension of credit may constitute a defense to recovery, to the extent of any new value, against an otherwise recoverable transfer of property. If a transfer is recovered by the Debtors, the transferee has an Unsecured Claim to the extent of the recovery. The Debtors reserve the right to bring preferential transfer claims against any transferee of a preferential transfer, including, but not limited to, the Non-Released Parties.  However, the Debtors are not aware of any preferential transfers.

**12.2    Fraudulent Transfers.** Under the Bankruptcy Code and various state laws, the Debtors may recover certain transfers of property, including the grant of a security interest in property, made while insolvent or which rendered the Debtors insolvent. The Debtors reserve the right to bring fraudulent conveyance claims.

The Debtors have conducted a limited analysis of potential recoveries under Chapter 5 of the Bankruptcy Code.  The Debtors are not currently aware of any Chapter 5 Causes of Action but reserve the right to pursue such Actions if they exist.  Creditors are advised that if they received a voidable transfer, they may be sued whether or not they vote to accept the Plan. All avoidance actions and rights pursuant to §§ 506(c), 510, 542, 543, 544, 545, 547, 548, 549, 550, 551, 552(b), 553 and 724 of the Bankruptcy Code and all causes of action under state, federal or other applicable law shall be retained and may be prosecuted or settled by the Debtors in their sole discretion. To the extent that material amounts are recovered, it will enhance the returns to the holders of Allowed Claims or Equity Interests.

## ARTICLE 13
## VOTING PROCEDURES AND REQUIREMENTS

**13.1    Ballots and Voting Deadline.** A ballot to be used to vote to accept or reject the Plan is enclosed with this Disclosure Statement. A Creditor who is voting must (1) carefully review the ballot and instructions thereon, (2) complete and execute the ballot indicating the Creditor's vote to either accept or reject the Plan, and (3) return the executed

ballot to the address indicated thereon by the deadline specified by the Bankruptcy Court.

**The Bankruptcy Court has directed that, to be counted for voting purposes, ballots for the acceptance or rejection of the Plan must be received by the Debtors no later than May __, 2019 at 5:30 P.M.**

If you hold an impaired Claim against the Debtors, return your ballot to:

> ROBERT A. SIMON
> WHITAKER CHALK SWINDLE & SCHWARTZ, PLLC
> 301 COMMERCE STREET, SUITE 3500
> FORT WORTH, TEXAS 76107
> PHONE: 817-878-0543
> FAX: 817-878-0501
> Email: rsimon@whitakerchalk.com

**TO BE COUNTED, YOUR BALLOT MUST BE RECEIVED NO LATER THAN 5:30 P.M. (PREVAILING CENTRAL TIME) ON MAY __, 2019.**

**13.2    Creditors Entitled to Vote.** Any Creditor whose Claim is impaired under the Plan is entitled to vote, if either (i) the Debtors have scheduled its Claim on its Statement of Liabilities and such Claim is not scheduled as disputed, contingent or unliquidated, or (ii) such Creditor has filed a Proof of Claim on or before the last date set by the Bankruptcy Court for filing Proofs of Claim and no objection has been filed to such Claim.

Holders of Disputed Claims are not entitled to vote on the Plan. Any Claim to which an objection has been filed and remains pending is not entitled to vote unless the Bankruptcy Court, upon motion by the Creditor who holds a Disputed Claim, temporarily allows the Claim in an amount that it deems proper for accepting or rejecting the Plan. Any such motion must be heard and determined by the Bankruptcy Court before the date established by the Bankruptcy Court as the final date to vote on the Plan. In addition, a vote may be disregarded if the Bankruptcy Court determines that the acceptance or rejection of the Plan by the Creditor was not solicited or obtained in good faith or according to the provisions of the Bankruptcy Code.

Classes of Claims that are not impaired are deemed to have accepted a plan of reorganization pursuant to § 1126(f) and, therefore, are not entitled to vote on a plan. Pursuant to § 1126, only classes of claims or equity interests that are "impaired" are entitled to vote on a plan of reorganization. Generally, a claim is impaired if the plan of reorganization alters the legal, equitable, or contractual rights to which the holder of such claim is otherwise entitled.

**13.3    Voting Procedures.** Unless otherwise directed by the Bankruptcy Court, all questions as to the validity, form, eligibility (including time of receipt), acceptance, revocation, or withdrawal of Ballots will be determined by the Debtors, in their sole discretion, and the Debtors' determination will be final and binding. The Debtors also reserve the right to reject any Ballot not in proper form, the acceptance of which would, in the opinion

of the Debtors or its counsel, be unlawful. The Debtors further reserve the right to waive any defects or irregularities or conditions or delivery as to any particular Ballot. The interpretation by the Debtors of the provisions of this Disclosure Statement and the Ballots will be final and binding on all parties in interest unless otherwise directed by the Bankruptcy Court. Unless waived, any defects or irregularities concerning deliveries of Ballots must be cured within such time as the Debtors (or the Bankruptcy Court) determine.   Neither the Debtors nor any other Person will be under any duty to provide notification of defects or irregularities with respect to deliveries of Ballots nor will any of them incur any liability for failure to provide such notification. Unless otherwise directed by the Bankruptcy Court, delivery of Ballots will not be deemed to have been made and will be invalidated unless or until all defects and irregularities have been timely cured or waived.

      **13.4**   **Vote Required for Class Acceptance.**   The Bankruptcy Code defines acceptance of a Chapter 11 plan by a class of Claims as the acceptance by holders of at least two-thirds (2/3) in dollar amount and more than one-half in number of the allowed Claims of the class actually voting to accept or reject the proposed plan.

      The Bankruptcy Code defines acceptance of a Chapter 11 plan by a class of Equity Interests as the acceptance by holders of at least two-thirds (2/3) in amount of the Allowed Interests in the class actually voting to accept or reject the proposed plan.

      **13.5**   **Cramdown and Withdrawal of the Plan.**  If the Plan is not accepted by all classes of impaired Creditors, the Debtors reserve the right to withdraw the Plan. If the Plan is accepted by one or more Classes of impaired Creditors of the Debtors, the Debtors reserve the right to request the Bankruptcy Court to approve the Plan under 11 U.S.C. § 1129(b).

**THE DEBTORS STRONGLY URGE ALL IMPAIRED CREDITORS TO VOTE TO ACCEPT THE PLAN.**

**Dated: March 25, 2019**

                        CONEX EQUIPMENT MANUFACTURING, LLC
                        C.R.P. MACHINE & WELDING, INC.
                        RONALD L. AND CATHY L. PERDUE
                        Jointly Administered Debtors in Possession

                By:  /s/ Cathy L Perdue
                     **Cathy L. Perdue**

                By:  /s/ Ronald L. Perdue
                     **Ronald L. Perdue**